Lonnie D. Giamela (SBN 228435)
E-Mail: lgiamela@fisherphillips.com
J. Misa Keelan (SBN 322129)
E-Mail: mkeelan@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071
Telephone: (213) 330-4500
Facsimile: (213) 330-4501

Attorneys for Defendant
STONELEDGE FURNITURE LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE LITTLE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STONELEDGE FURNITURE LLC, a Wisconsin Limited Liability Company; JERRY PHILLIPS, an individual; ANDREW CASTRO, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>*[Removed from San Joaquin Superior Court – Case No. STK-CV-UOE-2025-0015631]*<br><br>**DEFENDANT'S NOTICE AND PETITION OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441, AND 1446**<br><br>*[Filed concurrently with Civil Cover Sheet; Corporate Disclosures; Declaration of J. Misa Keelan; Declaration of Troy Muller; and Declaration of Vara Dillard]*<br><br>Complaint Filed: October 21, 2025<br>Trial Date:          TBD |

DEFENDANT'S NOTICE AND PETITION OF REMOVAL

FP 60685081.3

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND ALL PARTIES OF RECORD AND THEIR COUNSEL:**

PLEASE TAKE NOTICE THAT Defendant STONELEDGE FURNITURE LLC ("Stoneledge") hereby respectfully removes this action filed by Plaintiff DANIELLE LITTLE ("Plaintiff") from the Superior Court of the State of California for the County of San Joaquin, Case No. STK-CV-UOE-2025-0015631, to the United States District Court for the Eastern District of California. This District Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1332(A), 1441, and 1446. The grounds for removal are as follows:

## I.    STATEMENT OF JURISDICTION

1. This matter is a civil action over which this District Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). This action is one that may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b), in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, as set forth below. See 28 U.S.C. §§ 1332, 1441(b).

## II.    VENUE

2. This action was filed in the California Superior Court for the County of San Joaquin. Thus, venue properly lies in the United States District Court for the Eastern District of California. See 28 U.S.C. §§ 84(c), 1391, and 1441.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

3. On October 21, 2025, Plaintiff Little filed a civil action in the Los Angeles County Superior Court entitled *Danielle Little v. Stoneledge Furniture, LLC, Jerry Phillips, Andrew Castro and DOES 1 through 10*, Case No. STK-CV-UOE-2025-0015631 ("State Lawsuit"). See Declaration of J. Misa Keelan ("Keelan Decl."), ¶3, **Exhibit A.**

4. The Complaint alleges six (6) causes of action for: (1) Sexual Harassment in Violation of the Fair Employment and Housing Act ("FEHA"); (2) Failure to Prevent

FP 60685081.3

Harassment in Violation of FEHA; (3) Retaliation in Violation of FEHA; (4) Whistleblower Retaliation in Violation of California Labor Code § 1102.5; (5) Negligent Retention; and (6) Constructive Termination in Violation of Public Policy. Keelan Decl. ¶ 3, **Exhibit A.**

5.  On October 28, 2025, counsel for Plaintiff sent a Notice and Acknowledgement of Receipt of the Summons, Complaint, and Civil Case Cover Sheet for Defendant Stoneledge. Keelan Decl. ¶ 4, **Exhibit B.**

6.  On November 17, 2025, counsel for Defendant executed the above-listed Notice and Acknowledgment of Receipt for Stoneledge Furniture, LLC. Keelan Decl. ¶ 5, **Exhibit C.** As such, the Complaint was served on Defendant Stoneledge Furniture, LLC on November 17, 2025. *Id.*

7. Defendant Stoneledge filed its Answer and Affirmative Defenses to Plaintiff's Complaint on December 15, 2025. Keelan Decl. ¶ 6, **Exhibit D.**

8.  As of the date of this Notice of Removal, no other processes, pleadings, and/or order have been served upon Stoneledge in the State Lawsuit. Keelan Decl. ¶7.

9.  As of the date of this Notice of Removal, the individual defendants, Jerry Phillips and Andrew Castro, have not been served with the Summons and Complaint in the State Lawsuit. Keelan Decl. ¶8.

**IV.    TIMELINESS OF REMOVAL**

10. This Notice of Removal is timely filed because it is filed within thirty (30) days of service of the initial pleading setting forth the claim for relief upon which the State Lawsuit is based. *See* 28 U.S.C. § 1446(b)(3); *see also Murphy Bros. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344 (11th Cir. 1999). In addition, this Notice of Removal has been filed within one year of commencement of the State Lawsuit as required by 28 U.S.C. § 1446(b). Therefore, this Notice of Removal has been timely filed.

///

///

///

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

FP 60685081.3

## V.    GROUNDS FOR REMOVAL

### A. Complete Diversity of Citizenship Exists Between Plaintiff Little and Defendant Stoneledge

#### i.    Citizenship of Plaintiff

11. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. 28 U.S.C. § 1332 (a)(1); *see also Kanotor v. Wellesley Galleries, Ltd*., 704 F.2d 1088 (9th Cir. 1983); *Kramer v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that a person's domicile is the place he resides with the intention to remain). Residence is prima facie evidence of domicile. *Mondragon v. Capital One Auto Fin*., 736 F.3d 880, 886 (9th Cir. 2013); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Marroquin v. Wells Fargo, LLC*, No. 11CV163-L BLM, 2011 WL 476540, at *1 (S.D. Cal. Feb. 3, 2011). In fact, it is presumed that a natural person's residence is also his or her domicile, and a party resisting this presumption bears the burden of producing contrary evidence. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

12. In her Complaint, Plaintiff alleges that she "[a]t all times relevant for purposes of this Complaint, Plaintiff has been a resident of the State of California." *See* Keelan Decl., ¶3, **Exhibit A**, Complaint at ¶2. Nothing in the Complaint or other pleadings suggest otherwise. Accordingly, Plaintiff is domiciled in and is a citizen of the State of California.

#### ii.    Citizenship of Defendant Stoneledge Furniture, LLC

13. At the time of the filing of this action, Stoneledge Furniture, LLC was and continues to be a limited liability company. *See* Declaration of Troy Muller ("Muller Decl.") ¶3.

14. As set forth above, for diversity purposes, in determining the citizenship of a limited liability company, courts look to the citizenship of each owner/member of the company. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006); *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456–57 (1900).

15. At all times alleged in the State Lawsuit, at the time of the filing of this action, and at the time this Notice of Removal was filed, SLF was (and is) a limited liability company organized in the State of Wisconsin with its principal place of business in Tampa, Florida.

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

FP 60685081.3

*See* Muller Decl., ¶¶3-4, **Exhibit F**. All major corporate functions and positions are located in Tampa, Florida or Arcadia, Wisconsin. *Id*.

16. Moreover, at the time this action was filed and at the time this Notice of Removal was filed, SLF was, and is, a wholly owned subsidiary of Ashley Global Retail, LLC. Ashley Global Retail, LLC is a wholly owned subsidiary of Ashley Holdings FL, Inc. which is incorporated in Florida and has its principal place of business in Florida. Muller Decl., ¶3.

17. Accordingly, because Ashley Global Retail, LLC's sole owner is a citizen of the State of Florida, Ashley Global Retail, LLC is similarly a citizen of the State of Florida.

18. Finally, because Stoneledge's sole owner is a citizen of the State of Florida, Stoneledge is similarly a citizen of the State of Florida.  As such, diversity of citizenship exists between Plaintiff and Stoneledge.

### iii. Defendants Jerry Phillips and Andrew Castro are Sham Defendants Whose Citizenships Should be Disregarded for Purposes of Determining Diversity

19. As set forth above, Jerry Phillips ("Phillips") and Andrew Castro ("Castro") have not been served in this matter as of the date of filing this Notice and Petition of Removal.

20. The Complaint alleges causes of action against Defendants Phillips and Castro, however Plaintiff has not plead their respective citizenships. *See* Keelan Decl., ¶ 3, Ex. A. Assuming, arguendo, Plaintiff later argues that Phillips and Castro are non-diverse defendants in a later attempt to argue diversity does not exist, a non-diverse defendant named in a state court action is disregarded for diversity jurisdiction purposes if the Court determines that the defendant's joinder in the litigation is a "sham" or "fraudulent" in that no valid cause of action has been stated against that defendant. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  "It is commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.* 139 F.3d 1313, 1318 (9th Cir. 1998).  "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the

FP 60685081.3

joinder of the resident defendant is fraudulent." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Where, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff cannot recover against the party whose joinder is questioned, the joinder is considered fraudulent. *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1176 (N.D. Cal. 2003).

### a. Plaintiff Fails to State a Cause of Action Against Jerry Phillips

21. Plaintiff names Phillips as a defendant in just one (1) cause of action: Harassment in Violation of FEHA. This cause of action cannot be sustained against Phillips. To state a cause of action, a complaint must allege "*enough facts* to state a claim to relief that is *plausible on its face.*" *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570; *see also Ashcroft v. Iqbal* (2009) 556 U.S. 662, 684. To establish a "plausible" claim, the complaint must contain "more than labels and conclusions" or "formulaic recitations of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

22. In the Complaint, Plaintiff only alleges the following facts related to Phillips:

- "Within approximately 2.5 to 3 weeks of Plaintiff's employment, PHILLIPS began engaging in a systematic pattern of unwelcome sexual harassment directed toward Plaintiff. The harassment manifested in multiple forms, including sexually explicit comments, inappropriate propositions, and racially charged remarks that created a pervasively hostile work environment." Keelan Decl., ¶ 3, Ex. A, Compl. ¶ 15.

- "When Plaintiff wore professional attire to work, specifically a black jumpsuit appropriate for her sales position, PHILLIPS made sexually inappropriate remarks, asking her 'where the list to slap your ass.'" *Id.* Compl. ¶16;

- "Throughout March and April 2025, PHILLIPS engaged in numerous instances of propositioning Plaintiff, repeatedly asking her how much she would charge to strip for him." *Id.,* Compl. ¶ 17.

- "During a workplace conversation regarding water and hoses, PHILLIPS made racially offensive and sexually suggestive comments, stating that Plaintiff

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

FP 60685081.3

'doesn't know about white water hoses, she only know about black water hoses.'" *Id.,* Compl. ¶ 18.

23. None of the allegations in the Complaint support a claim against Phillips for harassment and therefore Phillips is a sham defendant and must be disregarded for purposes of removal.

24. To establish a harassment claim, a plaintiff must prove she was (1) "subjected to verbal or physical conduct" of a harassing nature; (2) "the conduct was unwelcome;" and (3) the conduct as sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *See Manatt v. Bank of America, NA* (9th Cir. 2003) 339 F.3d 792, 798 (citing *Kang v. U. Lim America, Inc*. (9th Cir. 2002) 296 F.3d 810, 817). Courts have ruled that "simple teasing" and "offhand comments," are not actionable. *See Manatt, supra,* 339 F.3d at 798. In *Manatt*, the Court ruled that plaintiff's allegations that defendant's repeated use of racial epithets, which occurred over a span of *two-and-a-half years*, did not constitute harassment because the conduct, although offensive and inappropriate, was not sufficiently "severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment." *Id*. at 795-98 ("Viewing the evidence in the light most favorable to [plaintiff] Manatt, we conclude that the conduct of Manatt's co-workers and supervisor—while offensive and inappropriate— did not so pollute the workplace that it altered the conditions of her employment. Her hostile work environment discrimination claim must therefore fail.") (*citing Vasquez v. County of Los Angeles,* 307 F.3d 884, 893 (9th Cir.2002) (finding no hostile environment discrimination where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); *Nielsen v. Trofholz Technologies, Inc*. (E.D. Cal. 2010) 750 F.Supp.2d 1157, 1169 (finding that defendant's verbal attacks and requirement that plaintiff work 30 days straight "certainly has not shown that the harassment was severe and pervasive.").

///

25. In *Kortan v. Cal. Youth Auth.* (9th Cir. 2000) 217 F.3d 1104, 1111, the court found there was no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea." The court specified that "however offensive his language, [the conduct] was not severe or pervasive" enough to bring a hostile work environment claim. *Id.* (Specifying that the magnitude of conduct required for a hostile work environment claim is exemplified in *Montero v. AGCO Corp.,* (9th Cir. 1999) 192 F.3d 856, in which a plaintiff was subjected to crude gestures, supervisors grabbing their crotches while speaking to her, placing their faces on plaintiff's bottom, trying to bite her neck, etc.)

26. If the Court in *Manatt* and *Kortan*, concluded that repeated racial epithets over two-and-a-half-years and directly calling the plaintiff and others derogatory terms does not rise to the level of "severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment," then certainly the facts alleged in Plaintiff's Complaint against Phillips do not rise to such level. Instead, Phillips' alleged conduct consists of personal offhand comments made over the course of three months, that even taken all together, simply do not constitute severe or pervasive conduct. Keelan Decl., ¶ 3, Ex. A, Compl. ¶¶ 13, 15 and 26.

27. Accordingly, Plaintiff fails to allege an actionable claim for harassment against Phillips. Phillips should therefore be declared nothing more than a sham defendant who must be disregarded for the purposes of determining the appropriateness of removal on the basis of diversity citizenship jurisdiction.

**a. Plaintiff Fails to State a Cause of Action Against Andrew Castro**

28. Similarly, Plaintiff names Castro as a defendant in just one (1) cause of action: Harassment in Violation of FEHA. This cause of action cannot be sustained against Castro. To state a cause of action, a complaint must allege "*enough facts* to state a claim to relief that is *plausible on its face.*" *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. 544, 570; *see also Ashcroft v. Iqbal* (2009) 556 U.S. 662, 684. To establish a "plausible" claim, the

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

complaint must contain "more than labels and conclusions" or "formulaic recitations of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

- In the Complaint, Plaintiff only alleges the following facts related to Castro:
- "Castro engaged in unwelcome personal inquiries about Plaintiff's marital status, asking whether she had recently been married and commenting that she didn't have a ring before, adding that she was 'too beautiful to not be married.'" Keelan Decl., ¶ 3, Ex. A, Compl. ¶ 29;
- "CASTRO deliberately invaded Plaintiff's physical workspace by moving his desk directly adjacent to hers, encroaching upon her personal space and creating an intimidating work environment designed to make her uncomfortable." *Id.* Compl. ¶30;
- "During discussions of employee names on an Impact Report, CASTRO made sexually explicit comments, stating 'I remember Baddar by masturbating.'" *Id.,* Compl. ¶ 30; and
- "When another employee hugged [Customer Service Representative Cyndi Senteno], CASTRO told the male employee to 'get your hand off my woman.'" *Id.,* Compl. ¶ 31.

29. None of the allegations in the Complaint support a claim against Castro for harassment and therefore Castro is a sham defendant and must be disregarded for purposes of removal.

30. If the Court in *Manatt* and *Kortan*, concluded that repeated racial epithets over two-and-a-half-years and directly calling the plaintiff and others derogatory terms does not rise to the level of "severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive work environment," then certainly the facts alleged in Plaintiff's Complaint against Castro do not rise to such level. Castro's alleged conduct consists of personal offhand comments, made over the course of three to four weeks, that even taken all together, simply do not constitute severe or pervasive conduct.  Keelan Decl. ¶ 3, Ex. A, Compl. ¶¶ 27 and 35.

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

FP 60685081.3

31. Accordingly, Plaintiff fails to allege an actionable claim for harassment against Castro. Castro should therefore be declared nothing more than a sham defendant who must be disregarded for the purposes of determining the appropriateness of removal on the basis of diversity citizenship jurisdiction.

### iv.    Citizenship of Doe Defendants.

32. The Complaint also names as Defendants DOES 1 through 50 ("Doe Defendants"). The alleged Doe Defendants named in the Complaint are not considered in assessing diversity. *See, e.g., Newcombe v. Adolf Coors Co.* 157 F.3d 686, 690–91 (9th Cir. 1998) ("28 U.S.C. §1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal. As such, the district court was correct in only considering the domicile of the named defendants."). Accordingly, the citizenship of the alleged Doe Defendants does not impact the diversity analysis for removal.

33. Because Plaintiff is a citizen of California and Defendant is not a citizen of California, complete diversity of citizenship exists in this matter.

### B. The Amount in Controversy Requirement is Satisfied

34. Diversity jurisdiction exists where the parties are diverse of citizenship and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. §1332(a).

35. The $75,000 threshold necessary for diversity jurisdiction is not particularly burdensome. In fact, when seeking removal of a state action to federal court based on diversity jurisdiction, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014). The failure of the Complaint to specify the total amount of damages or other monetary relief sought by Plaintiff does not deprive this Court of jurisdiction. *See, e.g., Saulic v. Symantec Corp.*, No. SA-CV-07-610-AHS(PLAx), 2007 WL 5074883, *5 (C.D. Cal. Dec. 26, 2007); *Parker-Williams v. Charles Tini & Associates, Inc.*, 53 F.Supp.3d 149, 152 (D.D.C. 2014).

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

FP 60685081.3

36. Where, as here, a complaint does not state the amount in controversy, Defendant needs only to establish by a preponderance of evidence that the claims exceed the jurisdictional minimum. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 982 (9th Cir. 2013); *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). "The amount in controversy may include damages (compensatory, punitive, or otherwise) . . . as well as attorneys' fees awarded under fee shifting statutes." *Id.* (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648–49 (9th Cir. 2016)). "In assessing the amount in controversy, [the Court] may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy." *Chavez*, 888 F.3d at 416.

37. While Defendant adamantly denies Plaintiff's allegations, denies any liability, and denies Plaintiff has suffered any damages, based upon the allegations contained in the Complaint, the amount of controversy in this action exceeds $75,000, exclusive of interest and costs. For purposes of determining the amount in controversy, a court must assume that the allegations in the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). Moreover, the amount in controversy can be determined from the complaint or from other sources, including statements made in the notice of removal. *See Kanter, supra*, 265 F.3d at 857 (9th Cir. 2001) (examining complaint and notice of removal for citizenship determination); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); ("[W]e reiterate that the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-40 & n.2 (9th Cir. 2002) (considering settlement demand letter for purposes of determining amount in controversy.

38. In the instant case, Plaintiff alleges six causes of action seeking recovery of lost salary and benefits, emotional distress damages; general damages; special damages; loss

FP 60685081.3

of earnings; restitution; injunctive relief; interest, attorneys' fees and costs; and statutory and civil penalties.  Keelan Decl., ¶ 3, **Exhibit A**,  Prayer ¶¶ 1-9.

39. Stoneledge employed Plaintiff as a Sales Manager beginning on or about February 24, 2025 earning an annual salary of $68,640.00 (i.e., $1,320.00 per week).[1]  Declaration of Vara Dillard ("Dillard Decl.") ¶¶ 3-4.

40. Plaintiff resigned from her employment on July 2, 2025. Dillard Decl. ¶3. Plaintiff's salary remained the same throughout her employment.  *Id.*

41. Plaintiff asserts that as a result of her allegedly wrongful termination, she has suffered actual, consequential and incidental financial losses, including loss of salary and benefits, as well as intangible loss of employment-related opportunities for growth in her field and damage to her professional reputation.  *See id.,* ¶ 3, **Exhibit A**, Compl. at ¶¶42, 52, 61, 75, 85, 95.

42. Plaintiff further asserts that she has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress.  *See  id.,*  ¶ 3, **Exhibit A**, Compl. at  ¶¶  43, 53, 62, 76, 96.

43. Plaintiff accuses Stoneledge of carrying out actions against Plaintiff in a despicable oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff.  *See  id.,*  ¶ 3, **Exhibit A**, Compl. at  ¶¶ 45, 55, 64, 78, 97.

44. The Complaint purports to assert six causes of action.  *See* Keelan Decl., ¶ 3, **Exhibit A**.  In all causes of action, Plaintiff seeks damages for lost wages and benefits.  *See id.,* ¶ 3, **Exhibit A**, Compl. at ¶¶42, 52, 61, 75, 85, 95.

45. In all of her causes of action, Plaintiff seeks non-economic damages and exemplary and punitive damages.  *See id.*, ¶ 3, **Exhibit A**, Compl. at ¶¶ 43, 45, 53, 55, 62, 64, 76, 78, 86, 87,  96, 97; Prayer for Relief.

46. In the first, second, third, and fourth causes of action, Plaintiff seeks attorneys' fees and costs  *See id.*, ¶ 3, **Exhibit A**, Compl. at ¶¶ 44, 54, 63, and 77; Prayer for Relief.

---

[1] Calculated by dividing $68,640.00 by 52 weeks.

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

FP 60685081.3

47. As discussed above, Plaintiff resigned from her employment on July 2, 2025. Dillard Decl., ¶ 3. Between the date of her resignation and the date of this Notice of Removal, approximately 24 weeks have passed. Accordingly, Plaintiff's backpay is $31,680.00 (calculated as $1,320.00 weekly salary over 24 weeks), as of the date of this Notice of Removal. *See id.* ¶4. However, Plaintiff seeks lost wages from the date of her resignation through trial. It is also likely that trial will not be set for at least a year after the filing of this Notice of Removal (that is, approximately 76 weeks after Plaintiff's employment resignation) —at which point, Plaintiff's amount in back pay claim will be approximately **$100,320.00** (calculated as $1,320.00 weekly salary over 76 weeks).[2] *See id.* California District Courts have expressly held that, for purposes of calculating the amount in controversy in employment cases, one year is a "very conservative" estimate of the time period between removal and trial. *See Barajas v. Wells Fargo Bank, N.A.,* No. EDCV 21-00844 JAK (SPx), 2022 WL 819928, at *4 (C.D. Cal. Mar. 18, 2022). Thus, Plaintiff's claim for lost wages alone satisfies the amount in controversy requirement. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (plaintiff's lost wages are included in amount in controversy); *Browand v. Ericsson Inc.*, No. 18-CV-02380-EMC, 2018 WL 3646445, at *5 (N.D. Cal. Aug. 1, 2018) (defendants' calculation that plaintiff would be owed more than $75,000 in backpay if she was wrongfully terminated sufficient to establish amount in controversy); *Tukay v. United Cont'l Holdings, Inc.*, No. 14-CV-04343-JST, 2014 WL 7275310, at *2 (N.D. Cal. Dec. 22, 2014) (defendant's reasonable calculation that plaintiff's backpay exceeds $75,000 sufficient to establish the amount in controversy).

48. Plaintiff's potential front pay damages are also considered in establishing the amount in controversy. *See Chavez*, 888 F.3d at 417–18 (where "a plaintiff's complaint at the time of removal claims wrongful termination resulting in lost future wages, those future

---

[2] Defendants do not concede that Plaintiff has stated a claim on which relief can be granted, that she suffered any damages, or that Defendants are responsible for any damages she may have suffered. In fact, Defendants deny all of these allegations and contend that Plaintiff's claims are meritless, and she is not entitled to any damages. Defendants reserve all defenses, including but not limited to defenses relating to failure to mitigate, legitimate business reasons for termination, and the after acquired evidence defense.

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

FP 60685081.3

wages are included in the amount in controversy.").  Such damages can include pay for multiple years of employment. *See, e.g.*, *Rabago-Alvarez v. Dart Industries, Inc.*, 55 Cal. App. 3d 91, 97 (1976) (4 years' pay deemed reasonable as "front pay" damages).  Notably, here, Plaintiff could in theory seek front pay damages for multiple years.  Based on Plaintiff's yearly payrate of $68,640.00, as discussed above, the following table is instructive for Plaintiff's putative front pay award: [3]

| Six Months Front Pay | One Year Front Pay | Two Years Front Pay | Three Years Front Pay |
|---|---|---|---|
| $34,320.00 | $68,640.00 | $137,280.00 | $205,920.00 |

Thus, taken together, if Plaintiff is awarded just six (6) months of front pay and her alleged backpay, Plaintiff's claim for lost wages alone exceeds the threshold amount in controversy for diversity jurisdiction.[4]

49. Plaintiff's allegations of emotional distress damages should also be considered when assessing the amount in controversy. *See Kroske*, 432 F.3d at 980; *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002). As part of her first through sixth causes of action, Plaintiff alleges Defendants have caused her emotional distress, humiliation, embarrassment and mental anguish." *See* Keelan Decl., ¶ 3, **Exhibit A**, Complaint, ¶¶ 27, 43, 53, 62, 76, 96. The fact that Plaintiff's request for emotional distress damages is vague has no bearing; "[t]he vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude [the] Court from noting that these damages are potentially substantial." *Richmond v. Allstate Ins. Co.,* 897 F. Supp. 447, 450 (S.D. Cal. 1995) (emotional distress damages "potentially substantial" even though certain amount not alleged); *see also Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033-34 (N.D. Cal. 2002) (finding that "emotional distress damages in a successful employment discrimination case may be substantial").  Instead, California courts look to similar jury verdicts to

---

[3] *See Huck v. Kone, Inc.*, No. C 10-1845 RS, 2011 WL 31108, at *4 (N.D. Cal. Jan. 5, 2011) (finding that a calculation of front pay damages based on a thirteen-year front pay award was acceptable for assessing amount in controversy).
[4] Defendant does not concede that Plaintiff is entitled to front pay damages.

FP 60685081.3

determine whether plaintiff's claims can satisfy the amount in controversy requirement. *Downs v. Adidas Am.*, No. 22-2690, 2022 WL 2116340, at *4 (C.D. Cal. June 13, 2022).

50. To that end, employment cases alleging similar emotional distress injuries have resulted in verdicts that well exceed the diversity jurisdiction threshold of $75,000. *See Velez v. Roche*, 335 F. Supp. 2d 1022, 1037 (N.D. Cal. 2004) ($300,000 emotional distress award where plaintiff suffered depression and other mental anguish following discrimination, even where plaintiff did not formally consult a doctor, did not take any medication for her condition, and continued to work); *Zanone v. City of Whittier*, 162 Cal. App. 4th 174, 183, 185 (2008) (affirming emotional distress award of $660,000 on plaintiff's FEHA discrimination and retaliation claims where plaintiff suffered "stress, anxiety and depression"); *Iwekaogwu v. City of Los Angeles*, 75 Cal. App. 4th 803, 821 (1999) (affirming award of more than $450,000 for emotional distress for FEHA discrimination claims where plaintiff suffered "nightmares, loss of appetite, and loss of interest in ordinary activities"); *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal. App. 4th 397, 410 (1994) (affirming award of more than $110,000 in emotional distress damages in employment discrimination case where plaintiff was diagnosed with anxiety); *Lave v Charter Commc'ns, LLC*, No. RIC 1508865, 2017 WL 2901375, at *3 (Cal. Super. Ct. June 07, 2017) (verdict awarding $575,000 in emotional distress damages where FEHA and IIED plaintiff experienced depression, insomnia, irritability, and anxiety); see also *Glenn-Davis v. City of Oakland*, No. C 02- 02257SI, 2007 WL 687486, at *2 (N.D. Cal. Mar. 5, 2007) (reducing $1.85 million emotional distress award to $400,000 for "garden variety" emotional distress stemming from plaintiff's discrimination claims).

51. Therefore, it is not only reasonable, but likely to assume that Plaintiff's claims for non-economic and emotional distress damages alone, are sufficient to satisfy the amount in controversy requirement. This is true even in cases where the underlying economic damages are not as significant. *Simpson v. Off. Depot, Inc.*, No. CV 10-02512 DMG (EX), 2010 WL 11597950, at *3 (C.D. Cal. June 21, 2010) (denying motion to remand in FEHA action finding that "[e]motional distress awards in California for wrongful termination in

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

FP 60685081.3

violation of public policy and discrimination under [FEHA]…can be large relative to the underlying economic damages."; collecting cases in which emotional distress verdicts exceeded 200% of economic damages). Here, even applying a conservative ratio of 1:1 (emotional distress to economic damages) to Plaintiff's economic damages would place the amount in controversy over the threshold at **$200,640.00**. Accordingly, Plaintiff's claim for emotional distress injuries establishes the amount in controversy.

52. Plaintiff's claim for punitive damages can also be considered when assessing the amount in controversy.[5] Employment cases in California have resulted in punitive damages awards exceeding $75,000. *See Pande v. ChevronTexaco Corp.*, No. C-04-05107 JCS, 2008 WL 906507, at *1 (N.D. Cal. Apr. 1, 2008) (plaintiff awarded $2.5 million in punitive damages on CFRA, FEHA, and related violation of public policy under California law claims); *Alvarado v. Fed. Express Corp.*, No. C 04-0098 SI, 2008 WL 744824, at *5 (N.D. Cal. Mar. 18, 2008) (upholding $300,000 punitive damages award in discrimination case); *Harvey v. Sybase, Inc.*, 76 Cal. Rptr. 3d 54, 62, 73 (Cal. Ct. App. 2008) (reinstating $500,000 punitive damages award on plaintiff's FEHA discrimination claims); *Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1137 (1998) (affirming $3.5 million punitive damages award against employer in FEHA discrimination case); *Hunio v. Tishman Const. Corp. of Cal.*, 18 Cal. Rptr. 2d 253, 257, 266 (Cal. Ct. App. 1993) (finding award of $1 million in punitive damages on discriminatory constructive discharge cause of action was "certainly within permissible limits"). Accordingly, Plaintiff's punitive damages claim establishes the amount in controversy. *See Rodriguez*, 2016 WL 3902838, at *6 (claim for punitive damages in employment discrimination and retaliation case established amount in controversy because punitive damage awards in similar cases have exceeded jurisdictional threshold). Here, applying a conservative punitive damages award ratio of 2:1 would double the amounts in controversy stated in above for Plaintiff's emotional distress damages.

---

[5] Defendant strongly denies that Plaintiff would be entitled to any punitive damages and plan to move to summarily dismiss any such claim for damages. Notably, Defendant denies any and all allegations in Plaintiff's Complaint and deny any wrongdoing.

DEFENDANTS' NOTICE AND PETITION OF REMOVAL

FP 60685081.3

53. Plaintiff also seeks to recover an unspecified amount in attorneys' fees related to all causes of action. Keelan Decl., ¶ 3, **Exhibit A**, Prayer ¶ 4. In the language of another court, "[w]hen attorney fees are added into the equation," the conclusion that more than $75,000 is in controversy "becomes irresistible." *Parker-Williams, supra*, 53 F.Supp.3d at p. 153. This conclusion is only further supported by the fact that in the Ninth Circuit, district courts have the discretion to calculate fee awards using either the lodestar method or the "percentage-of-the-fund" method. *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citations omitted). As such, even where "the Court lacks the information required to calculate [attorneys'] fees, it is difficult to believe that the amount in controversy [] could be lower than $75,000 when the [attorneys'] fees are factored in along with" other available damages. *Parker-Williams, supra*, 53 F.Supp.3d at p. 152. Courts include attorneys' fees accrued through trial when determining the amount in controversy. *Baker v. Tech Data Corp.*, No. 5:21-cv-02096-JWH (SPx), 2022 WL 1080944, at *2 (C.D. Cal. Apr. 11, 2022). Estimates for the time expended through trial for a *single plaintiff* employment case in the Central District range from 100 to 300 hours. *See Baker*, 2022 WL 1080944, at *2 (denying motion to remand based solely on reasonable estimate of $100,000 in attorneys' fees). Applying even a conservative estimate of 100 hours through trial based on a reasonable hourly rate of $400, Plaintiff's attorneys' fees would amount to an additional $40,000 on top of all other amounts discussed above.

54. Based on the foregoing, almost all of Plaintiff's distinct claims for damages independently establish that the amount in controversy in this case exceeds $75,000, and in the aggregate demonstrate that the amount is well above the jurisdictional threshold.

55. In sum, the evidence in the Complaint itself is sufficient to establish that Plaintiff has placed in controversy an amount exceeding the jurisdictional minimum amount of $75,000.00, exclusive of costs and interest. Accordingly, the State Lawsuit may be removed to the United States District Court for the Eastern District of California because, at the time this action was filed and at the present time, diversity jurisdiction exists.

## VI.    PROCEDURAL REQUIREMENTS FOR REMOVAL

56. Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), the United States District Court for the Eastern District of California is the appropriate court to which to remove this action from the San Joaquin County Superior Court, where the action was filed.

57. As required by 28 U.S.C. § 1446(d), a written notice of this Notice of Removal in the United States District Court for the Eastern District of California will be served on Plaintiff's counsel of record Nosrati Law, A Professional Law Corporation. A copy of the Notice to Adverse Party of Removal of Action to Federal Court is attached to the Declaration of J. Misa Keelan as **Exhibit E** (without exhibits because the exhibit is this Notice). In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court in the Superior Court for the State of California, County of San Joaquin.

58. Pursuant to 28 U.S.C. § 1446 (b)(2)(A)-(C), the only Defendant who has been served in this matter consent to removal.

59. This notice is executed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

60. In filing this notice, Defendant Stoneledge does not waive any defenses.

61. In filing this notice, Defendant Stoneledge does not admit any of the allegations made in Plaintiff's State Lawsuit.

## VII.    CONCLUSION

62. Based on the foregoing, Defendant Stoneledge prays that the above-described action pending in the Superior Court of California, County of San Joaquin be removed to the United States District Court for the Eastern District of California.

Dated: December 17, 2025          FISHER & PHILLIPS LLP
                                  By:/s/ J. Misa Keelan
                                      Lonnie D. Giamela
                                      J. Misa Keelan
                                      Attorneys for Defendant
                                      STONELEDGE FURNITURE LLC

18
DEFENDANTS' NOTICE AND PETITION OF REMOVAL

# CERTIFICATE OF SERVICE

I, the undersigned, am over the age of 18 years and not a party to this action. I am employed in the County of Los Angeles with the law offices of Fisher & Phillips LLP and its business address is 444 South Flower Street, Suite 1500, Los Angeles, California 90071.

On December 17, 2025, I served the following document(s) **DEFENDANTS' NOTICE AND PETITION OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441, AND 1446** on the person(s) listed below as follows:

Omid Nosrati
Christine Harmandayan
NOSRATI LAW

1801 Century Park East, Suite 840
Los Angeles, California 90067

*Attorneys for Plaintiff,*
*DANIELLE LITTLE*

Telephone: (310) 553-5630
Email: omid@nosratilaw.com
c.harmandayan@nosratilaw.com
matthew.houlin@nosratilaw.com
jdang@nosratilaw.com
ccastaneda@nosratilaw.com

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

☒ **[by ELECTRONIC SERVICE]** - Based on a court order or an agreement of the parties to accept service by electronic transmission, I electronically served the document(s) to the person(s) at the electronic service address(es) listed above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 17, 2025, at Los Angeles, California.

/s/

FP 60685081.3